RENDERED: OCTOBER 16, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1519-WC

KY FUELS CORP.                                                    APPELLANT

v.            PETITION FOR REVIEW OF A DECISION
              OF THE WORKERS' COMPENSATION BOARD
              ACTION NO. WC-13-67013

RICHARD COLE; HON. JONATHAN
WEATHERBY, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD                                                            APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: KY Fuels Corp. petitions for review of a Workers'

Compensation Board opinion affirming the administrative law judge's (ALJ)

determination that Richard Cole is permanently totally disabled (PTD). We

reverse and remand with directions to vacate the PTD determination and remand to the ALJ for further findings in conformity with this Opinion.

The Kentucky Supreme Court has held that a proper PTD determination involves a multi-step analysis including not just whether a claimant is unable to work at all but also whether the claimant's total disability results from the claimant's work injury. *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396-97 (Ky. 2015). As KY Fuels has raised meritorious arguments about whether Cole's functional difficulties (which led to his inability to work) resulted from his work-related injury or from other non-work-related conditions noted in the record, and as the ALJ did not explicitly resolve whether Cole's total disability resulted from his work injury based on expert medical evidence, the Board erred in affirming its PTD determination and further proceedings are necessary.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While driving a rock truck for KY Fuels in September 2013, Richard Cole hit a dip in the road which caused the air cushion under his seat to fail and the seat to slam down. He filed a workers' compensation claim, alleging injuries to his neck, hip, and low back and attaching a 2013 medical report from Dr. Anbu Nadar. And he later submitted an August 2014 supplemental medical report from Dr. Nadar stating, among other things, that Cole had reached maximum medical improvement (MMI).

Following the parties' presentation of evidence, ALJ Thomas Polites entered an opinion and award in February 2015. The ALJ determined that Cole had not sustained permanent injuries to his neck or hip and dismissed his claim for benefits for neck or hip injuries. Concluding that Cole had a compensable injury only to his low back and noting evidence that Cole suffered from a pre-existing low back condition, the ALJ found that the September 2013 incident had caused the previously dormant, non-symptomatic low back condition to be aroused into a disabling condition. Finding the assessment of Dr. Nadar to be more persuasive than that of KY Fuels' expert (Dr. John Vaughn), the ALJ determined that Cole had a ten percent (10%) impairment rating for his compensable injury to his low back. Further finding that Cole did not retain the physical capacity to return to his pre-injury type of work, the ALJ awarded Cole permanent partial disability benefits[1] enhanced by the three-multiplier in Kentucky Revised Statutes (KRS) 342.730(1)(c)1. Neither party appealed from the ALJ's February 2015 opinion and award.

Cole then filed a motion to reopen in November 2017, alleging that his back condition had worsened and that he had become totally disabled. He attached Dr. Nadar's medical reports from 2013 and 2017. Dr. Nadar's 2013

---

[1] From our review of the record, Cole apparently had not asserted that he was permanently totally disabled prior to the rendition of the 2015 opinion and award by ALJ Polites.

-3-

medical report opined that Cole was then temporarily totally disabled and that a permanent impairment rating of 10% was anticipated. Dr. Nadar's report from a May 2017 examination of Cole noted that an ALJ had denied Cole's neck injury claims and that Cole had not returned to work. In a September 2017 letter, Dr. Nadar opined that Cole's condition had worsened and assessed a thirteen percent (13%) whole person impairment. As KY Fuels points out, these attached 2013 and 2017 records from Dr. Nadar reflected very similar work restrictions—restrictions against "heavy lifting, twisting, turning, prolonged sitting or standing" in 2013 versus restrictions against "heavy lifting, twisting, turning, and prolonged sitting" in 2017. But we note that Dr. Nadar's August 2014 supplemental report had only imposed restrictions against heavy lifting when Cole had reached MMI.

Cole testified by deposition in January 2018 and submitted to an independent medical evaluation (IME) by Dr. Thomas Loeb in March 2018. Like Dr. Nadar, Dr. Loeb assessed a 13% impairment rating. But Dr. Loeb believed the impairment was not due to the work injury but, instead, was due to congenital and/or degenerative changes in Cole's back aggravated by other conditions in Cole's hip and tibia. He opined that the September 2013 work accident resulted only in a transient strain or sprain to the lumbar spine but did not cause any permanent impairment and that any worsening of Cole's condition since 2013 was not due to the work injury.

Cole also underwent an MRI to his lumbar spine in late March 2018 and the parties submitted supplemental reports from Dr. Nadar and Dr. Loeb. Dr. Nadar compared this MRI to another MRI of Cole's lumbar spine taken in 2014 and opined that the 2018 MRI showed a progression in Cole's low back condition. Dr. Loeb also reviewed the 2018 lumbar spine MRI and found it consistent with prior X-rays and CT findings indicating degenerative disc disease. But Dr. Loeb stated that this did not change his original opinion (that Cole's work accident did not cause any permanent impairment and any worsening of Cole's condition was not due to his work injury).

Following a June 2018 hearing at which Cole testified, ALJ Jonathan Weatherby determined that Cole was permanently totally disabled. The ALJ noted that both Dr. Loeb and Dr. Nadar assigned a 13% whole person impairment rating—an increase over the 10% impairment rating in the original award. The ALJ determined that ALJ Polites' finding that Cole sustained a work-related arousal of a dormant back condition was *res judicata*. The ALJ therefore found that Cole had suffered a work-related worsening of his condition and now had a 13% whole person impairment rating.

Citing *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000) and statutory definitions of work and permanent total disability,[2] in the

---

[2] KRS 342.0011(11)(c) (defining permanent total disability); KRS 342.0011(34) (defining work).

August 2018 opinion, the ALJ considered "whether [Cole] will be able to work reliably and whether his physical restrictions will interfere with his vocational capabilities" in making the PTD determination. And the ALJ noted factors must be considered such as education, vocational skills, and medical restrictions.

The ALJ found credible Cole's testimony that he could not dress himself due to being unable to bend because of his back condition and he found this to be supported by Dr. Nadar's MRI findings. And he observed that Cole appeared much older than his actual age and demonstrated difficulty ambulating. Based on Cole's testimony, the ALJ's observations, and "the objective medical evidence cited by Dr. Nadar[,]" the ALJ concluded that Cole was "unlikely to be able to provide services to another in return for renumeration on a regular and sustained basis in a competitive economy" and was therefore permanently totally disabled.

KY Fuels then appealed to the Board, which affirmed some parts of the ALJ's decision on reopening. The Board agreed with the ALJ's conclusions as to the binding effect of ALJ Polites' determination that Cole had sustained a work-related injury involving the arousal of a dormant pre-existing condition into a disabling state. And it affirmed the ALJ's determination that Cole's work-related condition had worsened as properly supported by substantial evidence—namely, Dr. Nadar's opinion. It disagreed with KY Fuels' argument that Dr. Nadar did not

find the worsening to be work-related, as it found such a finding implicit from the context of his report. And it found the ALJ had not erred in relying on Dr. Nadar's opinion and impairment rating in determining that Cole's work-related condition had worsened.

Although it affirmed the finding that Cole's work-related condition had worsened, the Board vacated the ALJ's determination that Cole was now permanently totally disabled. Declining to address KY Fuels' argument that the PTD determination was not supported by sufficient evidence, the Board concluded that more findings and analysis were required. Before concluding that the ALJ failed to comply with *Hamilton*'s individualized analysis requirements, the Board noted that the ALJ did not discuss Cole's work history, education, or ability to perform sedentary work, nor did the ALJ discuss his medical restrictions or whether these had changed since the original award. The Board stated in its September 2019 opinion, "Because the ALJ specifically cited Cole's difficulty ambulating as a primary reason he is now permanently totally disabled, he was required to cite a medical opinion establishing this difficulty is caused by his work-related injuries." Not reaching the issue of whether the ALJ's PTD determination was supported by substantial evidence, the Board, in its January 2019 opinion, remanded for "further findings of fact concerning the extent of Cole's current disability." Neither party appealed from this Board decision.

In its May 2019 opinion on remand, the ALJ again determined that Cole was permanently totally disabled. The ALJ reiterated his reliance on Dr. Nadar's opinion that Cole "had continued residuals from his neck and back secondary to the work injury" and "needed ongoing treatment because his condition had worsened." And he took note of Dr. Nadar's restricting Cole from "lifting, twisting, turning, and prolonged sitting."

Citing authority that a worker's testimony can be probative of the extent of his/her disability once work-related impairment is established, *see Hush v. Adams*, 584 S.W.2d 48, 51 (Ky. 1979), the ALJ found credible Cole's testimony about being unable to dress himself and having difficulty ambulating "due to the worsened condition of his back which caused pain radiating down into his feet with numbness." And the ALJ noted Cole's explanation that he had to use a cane because he could not lift a walker and that he had difficulty getting in or out of a vehicle. The ALJ found Cole's testimony to be supported by Dr. Nadar's MRI findings.

Based on Cole's self-described limitations and Dr. Nadar's restrictions, the ALJ found that Cole could no longer perform "any of the jobs with which he is familiar which include coal mining, rock truck driving, and dozer operation." And the ALJ further found that based on Cole's testimony and presentation "as supported by the objective medical evidence cited by Dr. Nadar,"

Cole "would be unlikely to be able to provide services to another in return for renumeration on a regular and sustained basis in a competitive economy" and was therefore permanently and totally disabled.

KY Fuels filed a motion for reconsideration on several grounds and requested additional findings on issues including "medical causation of decreased functioning related to the work-injury [sic]" —in other words, whether Cole's functional difficulties (particularly difficulty ambulating) were caused by his work-related low back injury or other non-work-related medical conditions. The ALJ denied this motion.

KY Fuels then appealed the opinion on remand to the Board, arguing that 1) the ALJ failed to cite a medical opinion on the work-relatedness of functional difficulties, 2) Cole's ambulation difficulties were not work-related, and 3) the ALJ did not provide sufficient factual findings for PTD. The insufficient factual findings for PTD in this case were: a) the ALJ considered non-work-related conditions, b) there was a lack of evidence that Cole's restrictions had changed, and c) the ALJ failed to analyze work history, education, and sedentary work. The Board affirmed on appeal, first noting that it had previously found the ALJ's determination that Cole's work-related low back condition had worsened to be supported by substantial evidence and that no appeal had been taken from its prior opinion, so that determination was binding. Then in its opinion of September

2019, the Board identified its task on appeal as determining "whether the ALJ followed the directives of the Board, and whether he provided a sufficient analysis supporting his determination of PTD."

After reviewing statutory and case law about PTD, the Board then reviewed the evidence relied upon by the ALJ, including Cole's testimony and Dr. Nadar's opinion (including his interpretation of the 2018 MRI). Reviewing Dr. Nadar's reports from both 2013 and 2017, the Board noted the diagnoses and impairment ratings and listed the restrictions in both reports without explicitly commenting on their similarities (Dr. Nadar restricted Cole from "heavy lifting, twisting, turning, and prolonged sitting or standing" in 2013 versus restricting Cole from "heavy lifting, twisting, turning and prolonged sitting" in 2017).

The Board recounted that when re-evaluating Cole in 2017, Dr. Nadar "noted the work injury and that Cole's cervical claim had been dismissed by ALJ Polites." And it stated that after Dr. Nadar examined Cole's "head/neck and lumbar spine" and reviewed the 2014 lumbar spine MRI in 2017, Dr. Nadar "found Cole's injuries caused his complaints, and assessed a 13% impairment rating based on the lumbar condition."

After quoting from or summarizing Dr. Nadar's 2017 letter and 2018 MRI findings, the Board described Cole's testimony about his symptoms (including his assessment that his back injury was also affecting his leg) and his

-10-

associated functional difficulties. And it took note of Cole's acknowledgment that he was not being treated for any hip or leg conditions, although he experienced hip pain and had previously injured his legs.

The Board then concluded that the ALJ had provided a "minimally sufficient analysis" for PTD under *Hamilton*, *supra*, and that the ALJ's PTD determination was properly supported by substantial evidence—namely "the opinions of Dr. Nadar, in conjunction with the 2018 MRI report and Cole's testimony." Explaining that "the ALJ merely summarized Dr. Nadar's statement contained within the September 21, 2017 letter when he mentioned Cole's neck symptoms" in making the PTD determination, it affirmed.

In its petition for review, KY Fuels makes substantially the same arguments that it made to the Board, and it further argues that the ALJ abused its discretion in awarding PTD benefits. It requests that the award of PTD benefits be vacated with directions that the ALJ be instructed not to award increased benefits upon reopening or "no more than PPD benefits consistent with Dr. Nadar's 13% impairment rating."

## STANDARD OF REVIEW

Despite KY Fuels' focus on whether the ALJ erred in awarding PTD benefits in its petition for review, our task is determining whether the Board erred in affirming the ALJ. "The function of further review of the WCB in the Court of

-11-

Appeals is to correct the Board only where the the [sic] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Keeping this standard in mind, we focus on whether the Board erred in concluding 1) that the ALJ engaged in the required legal analysis in determining Cole to be permanently totally disabled, and 2) that the ALJ's determination is supported by substantial evidence.

## RELEVANT STATUTES

Cole sought reopening under KRS 342.125(1)(d) for "[c]hange of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order."

Cole alleged on reopening that he had become permanently totally disabled. KRS 342.0011(11)(c) defines permanent total disability as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury . . . ." In this context, "injury" means a work-related injury, KRS 342.0011(1), and "work" means "providing services to another in return for remuneration on a regular and sustained basis in a competitive economy" under

-12-

KRS 342.0011(34). A "permanent disability rating" depends on a "permanent impairment rating" in this context and the two terms are defined in KRS 342.0011(36) and KRS 342.0011(35), respectively:

> (35) "Permanent impairment rating" means percentage of whole body impairment caused by the injury or occupational disease as determined by the "Guides to the Evaluation of Permanent Impairment";

> (36) "Permanent disability rating" means the permanent impairment rating selected by an administrative law judge times the factor set forth in the table that appears at KRS 342.730(1)(b)[.][3]

KRS 342.730(1)(a) concerns the payment of income benefits for permanent total disability and requires that: "Non-work-related impairment . . . shall not be considered in determining whether the employee is totally disabled for purposes of this subsection."

## ANALYSIS

In this case, it is settled that Cole suffered a work-related injury to his low back and that the Board had previously affirmed the ALJ's determination that Cole's work-related low back condition had worsened. And the Board also seemingly accepted that this worsened work-related low back condition caused the functional difficulties Cole complained of and resulted in Cole being unable to

---

[3] In this table in KRS 342.730(1)(b), the factor for a permanent impairment rating of 11 to 15%, for example, is 1. KRS 342.730(1)(b) addresses the calculation of permanent partial disability benefits, among other things.

-13-

perform any type of work based upon the ALJ's further findings on remand. But it is also settled that Cole has non-compensable, non-work-related conditions and so the question is not whether he is totally disabled (*i.e.*, unable to perform any type of work), but whether the record shows his total disability is caused by his work-related back condition. Although there is no reversible error in the Board's affirming the determination that Cole is unable to perform any type of work, KY Fuels has raised meritorious arguments concerning the medical causation of Cole's functional difficulties.

I.   **The ALJ Did Not Cite a Medical Opinion Directly Stating Whether Cole's Current Functional Difficulties Were Caused by His Work-Related Injury to His Low Back in the Opinion on Remand**

KY Fuels first argues that "[t]he ALJ did not cite a medical opinion on the work-relatedness of functional difficulties." The Board stated on page 9 of its January 2019 opinion vacating the initial PTD determination: "Because the ALJ specifically cited Cole's difficulty ambulating as a primary reason he is now permanently totally disabled, he was required to cite a medical opinion establishing this difficulty is caused by his work-related injuries."

In the Board's latest opinion, it notes KY Fuels' argument that "no medical expert opines Cole's difficulty with ambulation is related to his low back injury compared to his hip or tibia problems." The Board does not clearly and explicitly address this argument in affirming the opinion on remand. In reviewing

Dr. Nadar's 2017 report, the Board states that Dr. Nadar "found Cole's injuries caused his complaints," which perhaps suggests that the Board interpreted Dr. Nadar's 2017 report as stating that Cole's functional difficulties were caused by his work-related low back injury. However, Dr. Nadar did not directly state that Cole's functional difficulties were caused by his work-related low back injury from our review of his 2017 report, and the ALJ did not explicitly construe Dr. Nadar's 2017 report as expressing an opinion that Cole's functional difficulties were caused by his work-related injury.

On remand, the ALJ stated that he found credible Cole's testimony that he had difficulty ambulating and other functional difficulties (such as being unable to dress without help) due to his low back injury. And he also stated that Cole's descriptions of his functional difficulties were supported by Dr. Nadar's MRI findings showing a progression in Cole's work injury. But, despite the Board's stated requirement that a medical opinion be cited to support a finding that Cole's difficulty ambulating was caused by his work-related low back injury, the ALJ did not cite a medical opinion that directly stated that Cole's functional difficulties were caused by his work injury, nor did he explicitly find that Dr. Nadar's reports implicitly opined that the cause of Cole's functional difficulties was his work-related injury. Thus, it was improper for the Board to make its own

finding that Dr. Nadar determined the cause of Cole's functional difficulties to be the work-related injury.[4]

## II. If Medical Evidence Is Uncontroverted That the Work Injury Did Not Cause the Total Disability, ALJ Cannot Properly Rely on Own Experience, Inference, or Lay Testimony to the Contrary

KY Fuels next argues that its expert's opinion that Cole's present functional difficulties are not due to his work-related low back injury is uncontroverted and, thus, that the ALJ's PTD determination was not supported by substantial evidence and should not have been affirmed by the Board. Its expert, Dr. Loeb, opined that Cole's functional difficulties (such as with ambulation) are not due to the work-related low back injury but to other non-work-related conditions such as hip osteoarthritis and chronic osteomyelitis in Cole's tibia. The ALJ was clearly aware of Dr. Loeb's opinions, as he described them in some detail in his summary of evidence on pages 4 and 5 of the August 27, 2018 opinion and award on reopening.

---

[4] Although unpublished and, therefore, not cited as binding precedent under Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), the discussion in *Professional Financial Services v. Gordon*, No. 2018-SC-000363-WC, 2019 WL 2462488 (Ky. Jun. 13, 2019) comes to mind: "Under Kentucky workers' compensation law, one of an Administrative Law Judge's ("ALJ") primary roles is to make findings of fact. The role of the Workers' Compensation Board ("the Board"), as well [as] the courts, is to review those findings, not to make independent factual findings. . . . Upon review, we hold that the ALJ's determination was conclusory and insufficiently factually or legally based, and that the Board improperly filled in the factual blanks in affirming the ALJ's decision. We therefore reverse and remand to the ALJ to make additional findings of fact and conduct a more complete legal analysis." *Id*. at *1.

The medical reports of Dr. Nadar note most of the same medical conditions and history as Dr. Loeb. For example, Dr. Nadar noted Cole's prior history of surgery for leg fractures in both his 2013 and 2017 reports and noted that Cole continued to suffer from osteomyelitis as a complication from one leg surgery in the 2017 report. His 2013 report also noted that Cole had pre-existing arthritic changes to his hips. Dr. Nadar noted Cole's complaints of pain in his back and neck from his work injury (although he noted in 2017 that the neck claim had been dismissed) and that Cole denied suffering back or neck pain prior to his 2013 work injury.

Although noting the presence or prior history of non-work-related conditions, Dr. Nadar did not explicitly, specifically, and directly state which conditions caused Cole's functional difficulties as Dr. Loeb did. Rather, Dr. Nadar noted the symptoms and functional difficulties described by Cole and opined that Cole's condition (including his low back condition) has worsened in his 2017 letter.

The ALJ could properly rely on Cole's lay testimony concerning his experiencing symptoms and functional difficulties. *See*, *e.g.*, *Hush*, *supra*. But questions of medical causation (such as the medical cause of Cole's functional difficulties) generally require evidence from medical experts for resolution as

laypersons cannot properly assess the medical causation of symptoms. *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 620 (Ky. 2004).

When medical evidence is conflicting, "the question of which evidence to believe is the exclusive province of the ALJ." *Kingery v. Sumitomo Electric Wiring*, 481 S.W.3d 492, 496 (Ky. 2015) (citation omitted). But when the medical evidence on causation is uncontroverted, an ALJ may not properly rely on personal experience, inference, or lay testimony to disregard such uncontroverted medical proof. *Id.*

Although the Board noted KY Fuels' argument that its expert's opinion on medical causation of Cole's functional difficulties was uncontroverted, it did not explicitly state whether it agreed with this assertion in its latest opinion. From our review of the record, Dr. Nadar's reports do not contain the same sort of explicit and direct statement about medical causation of Cole's functional difficulties as Dr. Loeb's reports, although perhaps it would not be unreasonable to read Dr. Nadar's as implicitly suggesting that the work injury caused the functional difficulties. As KY Fuels points out, the ALJ's opinion on remand does not discuss the details of Dr. Nadar's reports. (And as we have noted, the ALJ did not explicitly construe Dr. Nadar's reports as opining that Cole's functional difficulties were caused by his work injury.)

Although perhaps the Board believed the ALJ had implicitly found that Dr. Nadar stated an opinion on medical causation of functional difficulties which controverted Dr. Loeb's opinion, the ALJ did not explicitly make such a finding of medical causation, and such a finding of medical causation is not plain from our review of Dr. Nadar's report. On remand, in determining whether Cole's total disability resulted from his work injury, the ALJ must issue further findings assessing whether there is medical evidence of Cole's functional difficulties being caused by his work-related low back injury rather than other noted, non-work-related medical conditions, including an explanation of whether Dr. Nadar's report controverted Dr. Loeb's opinion that Cole's functional difficulties were caused by other non-work-related conditions rather than by the work-related injury.

### III. Additional Findings on Medical Causation Required, but No Reversible Error in Board's Determining That Other Findings of Fact Were Sufficient

KY Fuels argues that, on remand, the ALJ once again did not provide sufficient fact-finding despite the Board's conclusion that the ALJ's analysis on remand was "minimally sufficient." And it specifically asserts that a) the ALJ considered non-work-related conditions and/or failed to distinguish between work-related conditions/impairment and non-work-related conditions/impairment and based PTD on non-work-related conditions, b) there is no evidence of a change in restrictions and/or the ALJ failed to compare past and present restrictions, and c)

-19-

the ALJ did not analyze work history, education, and sedentary work. We conclude that although additional findings are necessary concerning whether Cole's total disability is *caused* by his work injury, we do not find fault with the Board's conclusion that the ALJ issued sufficient findings and analysis in determining that Cole was totally disabled (unable to perform any type of work) considering the individual analysis requirements in *Hamilton*, *supra*.

In determining whether an individual is unable to perform any type of work and is, thus, totally disabled, *Hamilton* calls for analysis of several factors such as the claimant's physical, intellectual, and vocational status. And it requires assessing "the likelihood that the particular worker would be able to find work consistently under normal employment conditions" with consideration of "whether the individual will be able to work dependably and whether the worker's physical restrictions will interfere with vocational capabilities." *Hamilton*, 34 S.W.3d at 51.

*Consideration of Non-Work-Related Impairment is Improper*

KRS 342.730(1)(a) prohibits the consideration of non-work-related impairment in determining if a worker is totally disabled for purposes of determining entitlement to PTD benefits.

KY Fuels argues that the ALJ improperly considered impairment caused by non-work-related problems in Cole's neck, hips, and legs in determining that Cole was permanently totally disabled, rather than solely considering the

-20-

impairment caused by Cole's work-related low back condition. Noting the ALJ's stated reliance on Dr. Nadar's opinion, it points out that Dr. Nadar did not explicitly discuss the relative effects of non-work-related conditions such as neck, hip, and leg problems versus the work-related low back condition in causing Cole's functional difficulties and resulting inability to work. Essentially, KY Fuels contends that the ALJ failed to delineate to what extent Cole's total disability/inability to work/impairment was caused by the work injury versus other concurrent medical conditions and, thus, that the Board erred in affirming the PTD determination on the limited findings made by the ALJ on remand. We agree considering recent Kentucky Supreme Court precedent. *See Stumbo*, 461 S.W.3d at 397 (affirming Board's vacating ALJ's PTD determination partly due to ALJ's failing to delineate whether total disability was caused by work injury or pre-existing condition and, thus, not properly determining whether total disability resulted from work injury).

Although we believe that further findings as to the medical causation of Cole's functional difficulties and resulting inability to work are necessary, we do not conclude that the Board otherwise overlooked or misconstrued controlling law or committed a grievous error in assessing the evidence in concluding that the ALJ issued sufficient findings and analysis about other non-medical causation

factors in light of "individualized analysis" requirements for determinations that individuals are unable to work at all under *Hamilton*, *supra*.

*Additional Discussion of Whether Current Medical Restrictions Resulted from Work-Related Injury Required*

The January 2019 Board opinion remanding to the ALJ noted that the ALJ did not discuss medical restrictions imposed by reviewing or treating physicians, nor whether these restrictions had changed on reopening. The ALJ's opinion on remand referred to Dr. Nadar restricting Cole from heavy lifting, twisting, turning, and prolonged sitting—presumably referring to 2017 restrictions as this followed the ALJ's reiteration of reliance on Dr. Nadar's opinion that Cole's condition had worsened. The ALJ did not explicitly discuss on remand what Cole's restrictions were under the original 2015 decision, however, or whether they had changed.

The original 2015 ALJ decision stated that restrictions by both Dr. Vaughn and Dr. Nadar were relevant in determining whether Cole could return to his pre-injury type of work at page 14 and referred to Dr. Vaughn's restrictions of "no lifting over 30 pounds" and "alternate standing and sitting" on that same page. Dr. Nadar's restrictions were not set forth in the findings of fact and conclusions of law in the 2015 ALJ opinion. However, in the summary of evidence section of the 2015 ALJ opinion, the ALJ noted that Dr. Nadar had only recommended restrictions of "no lifting greater than 30 pounds" based on Dr. Nadar's **2014**

-22-

supplemental medical report (pages 6-7 of 2015 ALJ opinion). We note that the 2015 ALJ opinion did not discuss any restrictions from Dr. Nadar's 2013 report. And although Dr. Nadar's 2013 and 2017 reports reflected similar work restrictions, Dr. Nadar's 2014 supplemental report indicated only one restriction (against heavy lifting) upon Cole reaching MMI.

Although the ALJ explicitly only discussed Dr. Nadar's 2017 restrictions in the opinion on remand and did not explicitly compare restrictions in prior reports or in the 2015 opinion and award, the 2015 ALJ decision did reference the 2014 supplemental report of Dr. Nadar imposing only a restriction against heavy lifting in contrast to the 2017 report listing several other restrictions. And although the Board's January 2019 opinion faulted the ALJ's August 2018 opinion and award for not discussing physicians' restrictions nor whether these restrictions had changed on reopening, the Board was apparently satisfied with the ALJ's discussion of restrictions in its opinion on remand despite the lack of discussion of whether restrictions had changed. Based on precedent, however, we conclude that the Board erred in affirming the PTD determination due to the ALJ's failure to delineate whether Cole's restrictions were imposed due to his work-related injury or whether these restrictions were necessitated by other non-work-related conditions. *See Stumbo*, 461 S.W.3d at 397 (holding that ALJ fell short in

not delineating whether claimant's restrictions resulted from his work injury or his pre-existing condition).

## IV. No Reversible Error in Board's Determination That Discussion of Factors Not Relating to Medical Causation Was Minimally Sufficient

KY Fuels argues that the ALJ improperly failed to discuss Cole's work history, education, and sedentary work in its findings on remand. We note these factors are not relevant to determining *medical causation* of Cole's functional difficulties but are relevant to determining whether he would be unable to do any type of work (meaning regular gainful employment by others in a competitive economy). In vacating the previous PTD determination for failure to provide the required analysis in its January 2019 opinion, the Board's discussion had noted (among other things) that "[t]he ALJ did not articulate his consideration of Cole's prior work history or education, or his ability to otherwise perform sedentary work." Work history and education can or perhaps even should be discussed as part of the individualized analysis for PTD under *Hamilton*, 34 S.W.3d at 51 (emphasis added) (stating that proper determination of PTD "necessarily includes a consideration of factors *such as* the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact"). But the "such as" language in *Hamilton* suggests that no particular factor must be explicitly discussed.

Although the ALJ's discussion on remand was somewhat minimal, the ALJ did note Cole's prior work history as a coal miner, rock truck driver, and dozer operator in making a finding that he could not return to the type of work he was familiar with—including work as a coal miner, rock truck driver, and dozer operator. Thus, there was some discussion and awareness of Cole's work history.

As for Cole's education, this was not explicitly discussed in either the ALJ's May 29, 2019 opinion on remand or in the August 27, 2018 opinion and award on reopening. However, the ALJ stated in the August 2018 opinion on reopening that the February 2015 opinion and award was entered into evidence, reviewed, and considered. And the 2015 ALJ opinion and award noted that Cole had a high school education and no specialized vocational training in the summary of evidence. Despite the lack of explicit discussion of Cole's education in the opinion on remand, Cole's educational history is evident from the prior ALJ's 2015 decision.

The ALJ's opinion on remand also contains no specific, explicit discussion of whether Cole could perform sedentary work. But in listing Cole's restriction against prolonged sitting among other medical restrictions, the ALJ implicitly cast some doubt on Cole's ability to perform at least some types of sedentary work.

As *Hamilton* does not necessarily require explicit discussion of any particular factor, we do not discern reversible error under the *Western Baptist* standard. And, from our review of the record, substantial evidence relating to these factors supports a determination that Cole was unable to perform any type of work (as defined by KRS 342.0011(34)). Again, however, medical causation of Cole's total disability must be addressed on remand.

## CONCLUSION

For the foregoing reasons, we reverse and remand with directions to vacate the PTD award and remand to the ALJ to issue explicit findings determining whether Cole's work-related condition caused his total disability based upon expert medical evidence. On remand, the ALJ must address whether Cole's difficulty ambulating and other functional difficulties are caused by his work-related low back injury and whether his current medical restrictions stem from his work-related low back injury or other medical conditions.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FILED FOR APPELLEE

Steven L. Kimbler
Lexington, Kentucky